IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIA MICHELLE BOND, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:21-CV-1304-E |
| § | |
| DEFENSE FINANCE AND § | |
| ACCOUNTING SERVICE, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This civil action under the Fair Credit Reporting Act (FCRA) arises from Plaintiff Tia Michelle Bond's avowed "long and tortured struggle with [Defendant Defense Finance and Accounting Service (DFAS)] in attempting to get the balance waived" on a debt Bond incurred after enrolling in the United States Navy Nurse Candidate Program. Pl.'s Br. 1 (ECF No. 52). Bond contends that the debt at issue was discharged in bankruptcy and that DFAS's continued reporting to credit agencies that she remains liable for the debt constitutes both negligent and willful violations of the FCRA. *Id.* DFAS disputes that the debt was discharged and that it violated the FCRA. *Id.* Both parties filed motions for summary judgment. For the following reasons, the District Court should DENY Bond's Motion (ECF No. 51), GRANT DFAS's Motion (ECF No. 48), and DISMISS Bond's claims with prejudice.

1

I.

Bond enrolled in the U.S. Navy's Nurse Candidate Program (NCP) on August 3, 2010. Pl.'s App. 1, ¶ 1 (ECF No. 53). The terms of the program required Bond to "enlist in the Navy Reserve, complete a baccalaureate degree in a qualified nursing program within 24 months of enlistment, obtain and maintain a license to practice as a registered nurse, and accept an appointment as a commissioned officer in the United States Navy for a period of eight years following completion of the [nursing] program." *Id.* ¶ 2. In exchange, Bond would receive financial assistance. Specifically, Bond would be entitled to a $10,000 "accession bonus," payable in two installments—$5,000 upon her enlistment and $5,000 on the 6-month anniversary of her enlistment. Pl.'s App., Ex. A (ECF No. 53-2); Pl.'s Br., Ex. A (ECF No. 57-2). Additionally, Bond would receive a "continuation bonus of $1,000 per month for each month enrolled as a full-time [nursing] student." *Id.* Bond agreed to repay the full amount of the accession and continuation bonuses if she disenrolled from the program "for any reason other than medical" or otherwise failed to meet the program's requirements. *Id.*

While she was enrolled in the NCP, Bond received the full $10,000 accession bonus and $9,433.33 in monthly continuation-bonus payments. Pl.'s App. ¶ 10 (ECF No. 53). However, Bond allegedly became disabled,

2

failed to fulfill certain program academic requirements, and disenrolled from the NCP in 2012. *Id.* ¶¶ 8, 9.

DFAS, as the debt servicer for the United States military, was assigned Bond's debt upon her disenrollment. Def.'s Br. 1 (ECF No. 49). After DFAS notified Bond that she owed $19,433.33, she commenced her efforts to have the balance waived. Initially, Bond re-enlisted in the Navy Reserves in an attempt to have her debt waived through service. *Id.* ¶ 11. She applied for a debt waiver with DFAS three times before being informed she was not eligible for a waiver. *Id.* ¶¶ 12-15. She appealed DFAS's decision to the Defense Office of Hearings and Appeal. *See* Pl.'s Br., Ex. M (ECF No. 57-14). In her appeal, Bond generally argued that DFAS was not treating her fairly by attempting to collect her debt. *Id.* She alleged that she had to disenroll from the nursing program due to medical issues. *Id.* Bond also insisted that she was told she could repay the debt through service in the Navy Reserves. *Id.*

The Defense Office of Hearings and Appeals sustained DFAS's decision that Bond's debt was ineligible for waiver. *See id.* In its Recommendation and Administrative Report, the Office explained that Bond did not provide any documentation substantiating her claim that she was told she could repay her debt through service. *Id.* Additionally, the Office was not persuaded by Bond's medical explanation for disenrollment, since "her medical condition has not stopped her from rejoining the

3

Reserves[,]" and regardless, "[she] had a break in service that disqualified her from the medical clause in the contract." *Id.*

Undeterred, Bond continued her efforts to have the debt waived. Her attempts included calling the Department of Defense's Hotline and writing a letter to her congressman. Pl.'s App. ¶¶ 18, 19 (ECF No. 53). DFAS never waived her debt, but DFAS did collect approximately $6,600 through the Department of Treasury Offset Program. *See* Def.'s App. 080 (ECF No. 50).

On May 19, 2017, Bond filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado. *Id.* at 082. In her petition, she listed DFAS as an unsecured nonpriority creditor. *Id.* at 179. She attested that the original amount of her debt was $19,433.33 and that the current amount she owed was $13,020.00. *Id.*

On August 21, 2017, the bankruptcy court issued a Chapter 7 discharge order. *Id.* at 090–91. The discharge order reads: "A discharge under 11 U.S.C. § 727 is granted to: Tia Michelle Bond." The order includes a section entitled "Explanation of Bankruptcy Discharge in a Chapter 7 Case." In this section, the bankruptcy court states that "[m]ost debts are covered by the discharge, but not all." *Id.* at 090. The order further explains that the information in the order "is only a general summary of the bankruptcy discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case." *Id.* at 091.

Even before she received the bankruptcy court's discharge order and throughout 2018 and 2019, Bond disputed her debt with various entities. A DFAS employee responsible for responding to bankruptcies began investigating Bond's case. *Id.* at 110, 208. The employee contacted an attorney in DFAS's Office of General Counsel to inquire about whether Bond's debt had been discharged in bankruptcy. The attorney determined that while the accession bonus debt was discharged, the continuation bonus debt was not discharged. According to the DFAS attorney, the continuation bonus constituted an educational stipend and, thus, it could only be discharged with a finding of undue hardship. *See id.* at 111–13; 11 U.S.C. § 523(a)(8)(A)(ii)).

Bond filed complaints with the Indiana Attorney General in November 2017 and February 2018, claiming that her entire debt with DFAS had been discharged in bankruptcy. Def.'s App. 131–38 (ECF No. 50-2). The Indiana Attorney General's Office forwarded Bond's complaints to DFAS, and DFAS's Office of General Counsel again explained its position that the continuation bonus was an educational stipend and Bond's obligation to repay could not be discharged absent a finding from the bankruptcy court that Bond would suffer undue hardship if the debt was not discharged. *Id.* at 141–42. The Indiana Attorney General's Office closed its investigation upon receiving DFAS's response. *Id.* at 141.

Bond also contacted DFAS directly to dispute her debt. She alleged that "the [bankruptcy] court and her congressman and the judge said [her debt] was dischargeable[.]" *Id.* at 111.

On August 8, 2019, Bond sent a dispute letter to Equifax, a credit reporting agency. Pl.'s App., Ex. A (ECF No. 53); Pl.'s Br. Ex. HH (ECF No. 53-33). In the letter, she complained that her credit report was incorrect as it listed a balance owed on a debt to DFAS when that debt had been discharged in bankruptcy. Pl.'s Br. Ex. HH. She requested that the debt be removed, that her balance be listed as $0.00, and that Equifax add a notation that her debts were included in her Chapter 7 bankruptcy and discharged by the bankruptcy court's August 2017 discharge order. *Id.*

When her credit report continued to reflect a balance on the DFAS debt, Bond filed her Complaint in this civil action on June 7, 2021, alleging that DFAS willfully and negligently violated the FCRA.[1] Compl. ¶¶ 64-84 (ECF No. 1). Bond sues DFAS as a furnisher of information to credit reporting agencies and alleges that DFAS violated 15 U.S.C. § 1681s-2(b). *Id.*

---

[1] In Bond's original Complaint, she also sued other defendants in addition to DFAS. *See* Compl. (ECF No. 1). Bond sued Equifax Information Services, LLC, as a credit reporting agency, and Harley-Davidson Financial Services, Inc., as a furnisher of information to credit reporting agencies. The Court terminated Defendant Harley-Davidson Financial Services, Inc. as a party on August 16, 2021, because Bond and Harley-Davidson agreed that under the terms of their contract, they were required to arbitrate Bond's FCRA claims. *See* Order Compelling Arbitration (ECF No. 15). The Court terminated Defendant Equifax on October 18, 2021, pursuant to a joint stipulation of dismissal. *See* Joint Stipulation Dismissal (ECF No. 18).

¶ 69. Specifically, she alleges DFAS failed to conduct a full and proper investigation into her dispute with a credit reporting agency. *Id.* Further, Bond alleges DFAS reported inaccurate information to a credit reporting agency—she claims that DFAS reported the continuation bonus as a debt, which "is inaccurate since it fails to indicate that [her] DFAS debts were discharged in a bankruptcy proceeding." Compl. ¶ 19; Def.'s App. 189. Bond claims that, as a result of DFAS's continued reporting of the debt after her Chapter 7 bankruptcy, she was turned down for car loans, a mortgage, and credit card applications. Pl.'s App., ¶ 82 (ECF No. 53). She also claims she suffered from anxiety and emotional distress "due to the toll years of disputes with DFAS had taken on her." *Id.* ¶ 91.

Initially, DFAS sought to dismiss Bond's claims on grounds that the FCRA does not clearly and unequivocally waive sovereign immunity and thus the Court lacks jurisdiction over Bond's claims against it. *See* Def. Mot. (ECF No. 21). The Court disagreed and denied DFAS's motion.[2] Thereafter, DFAS filed an answer. *See* Answer (ECF No. 27). The parties conducted discovery and participated in an unsuccessful settlement conference.

DFAS filed its Motion for Summary Judgment (ECF No. 48) and accompanying brief in support on March 3, 2023. Bond filed her Motion for

---

[2] Recently, the United States Supreme Court held that, indeed, the FCRA "effects a clear waiver of sovereign immunity." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, No. 22-846, slip op. at 6, 601 U.S. ___ (Feb. 8, 2024).

Summary Judgment (ECF No. 51) and accompanying brief in support on March 10, 2023. Both Motions are fully briefed and ripe for consideration.

## II.

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, a case is presented by way of cross-motions for summary judgment, the parties' burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial.

A party seeking summary judgment who does not have the burden of proof at trial—such as DFAS, here—need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). To do so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex.

8

2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

By contrast, a movant who bears the burden of proof at trial—like Bond in this case—must establish "beyond peradventure all of the essential elements of the [claim or] defense to warrant judgment in [her] favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (emphasis removed) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). This burden is a "heavy" one. *See, e.g., Taylor v. Metro. Life Ins. Co.*, 366 F. Supp. 3d 810, 814 (N.D. Tex. Feb. 14, 2019) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

"Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id*. (first citing *Ragas*, 136 F.3d at 458; and then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). Rather, the parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R.

2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

By contrast, a movant who bears the burden of proof at trial—like Bond in this case—must establish "beyond peradventure all of the essential elements of the [claim or] defense to warrant judgment in [her] favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (emphasis removed) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). This burden is a "heavy" one. *See, e.g., Taylor v. Metro. Life Ins. Co.*, 366 F. Supp. 3d 810, 814 (N.D. Tex. Feb. 14, 2019) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007)).

"Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id*. (first citing *Ragas*, 136 F.3d at 458; and then citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). Rather, the parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R.

Civ. P. 56(e)). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

III.

A.

"'Though the FCRA primarily regulates consumer credit reporting agencies, the statute also creates obligations on "furnishers of information" to provide accurate information to those reporting agencies.'" *Spencer v. Specialized Loan Servicing, LLC*, 2021 WL 4552548, at *5 (N.D. Tex. Sept. 1, 2021) (Scholer, J.) (citing *Cano v. State Farm Mut. Auto. Ins. Co.*, 425 F. Supp. 3d 779, 792 (W.D. Tex. 2019)). A "furnisher of information" is "an entity that transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." *Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 794 n.7 (N.D. Tex. 2014).

Under § 1681s-2(a), furnishers of information "shall not furnish any information relating to a consumer to any consumer reporting agency if the [furnisher] knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a). And while there is no private cause of action for a furnisher's initial reporting of inaccurate information to credit reporting agencies under § 1681s-2(a), "the FCRA does create a private cause of action for violations of § 1681s-2(b), which sets forth the duties of

furnishers of information once they have been notified of a dispute." *Spencer,* 2021 WL 4552548, at *5 (citing *Smith,* 2010 WL 3338537, at *14).

Under 15 U.S.C. § 1681i(a)(2), a consumer reporting agency must give notice of a dispute to a furnisher of information within five business days from the time the consumer notifies the consumer reporting agency of the dispute. And only "[*a*]*fter* receiving notice pursuant to section 1681i(a)(2)" is a furnisher obligated to conform to the duties laid out in 1681s-2(b). 15 U.S.C. § 1681s-2(a) (emphasis added).

Specifically, § 1681s-2(b) provides:

After receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

> **(A)** conduct an investigation with respect to the disputed information;
>
> **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> **(C)** report the results of the investigation to the consumer reporting agency;
>
> **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a

11

> consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> **(i)** modify that item of information;
>
> **(ii)** delete that item of information; or
>
> **(iii)** permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b).

Accordingly, in order to recover against DFAS under § 1681s-2(b), Bond must show that "(1) [s]he disputed the accuracy or completeness of information with a consumer reporting agency; (2) the agency notified [DFAS] of [Bond's] dispute; (3) and [DFAS] failed to conduct an investigation, correct any inaccuracies, or notify the agency of the results of the investigation.'" *Spencer*, 2021 WL 4552548, at *6 (citing *Shaunfield,* 991 F. Supp. 2d at 805).

### B.

DFAS's duties under § 1681s–2(b) "attach only if [DFAS] first receives notice from the consumer reporting agency in accordance with the procedure established by 15 U.S.C. § 1681i(a)(2)." *Hunsinger v. Sko Brenner Am., Inc.*, 2014 WL 1462443, at *7 (N.D. Tex. Apr. 15, 2014); *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) ("Such notice is necessary to trigger the furnisher's duties under Section 1681s–2(b)."). Among other things, the procedure established by § 1681i(a)(2)

12

requires reporting agencies to provide prompt notice of consumer disputes to furnishers of information. 15 U.S.C. § 1681i(a)(2)(A) ("Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."). Here, Bond is not entitled to summary judgment—and DFAS is entitled to summary judgment—on Bond's FCRA claims because the evidence fails to raise a genuine issue as to whether a reporting agency provided the requisite notice of Bond's dispute, so as to trigger DFAS's obligations under § 1681s-2(b).

The summary judgment evidence establishes that, over the years, Bond notified multiple entities and individuals of her dispute with DFAS, including DFAS itself, Bond's congressman, and the Indiana Attorney General's Office. Pl.'s App. ¶¶ 18, 19 (ECF No. 53); Def.'s App. 111, 131–38 (ECF No. 50). However, the FCRA defines "consumer reporting agency" as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses

13

> any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a. DFAS, Bond's congressman, and the Indiana Attorney General's Office do not meet this definition. And "[d]irect notification [to the furnisher] by the consumer does not trigger a furnisher's duties under § 1681s–2(b)." *Hunsinger*, 2014 WL 1462443, at *7. Thus, any notice Bond provided to DFAS, her congressman, or the Indiana Attorney General's Office was legally insufficient to trigger DFAS's obligations under § 1681s-2(b).

The summary judgment evidence further shows that Bond notified Equifax—a consumer reporting agency—of her dispute with DFAS on August 8, 2019. *See* Pl.'s App. ¶ 68 (ECF No. 53); Pl.'s Br. Ex. HH (ECF No. 53-3). Equifax is a "consumer reporting agency" under 15 U.S.C. § 1681a. Regarding this single instance of notice to a consumer reporting agency, however, Bond does not point to any evidence showing that Equifax notified DFAS of Bond's dispute, as required by § 1681i(a)(2)(A). In the absence of such evidence, Bond cannot satisfy her burden to establish beyond peradventure an essential element of her FCRA claim. *See Hunsinger*, 2014 WL 1462443, at *7-8 ("Because [plaintiff] has failed to produce competent summary judgment evidence that [the furnisher] received notice from [the credit reporting agency] pursuant to § 1681i(a)(2), . . . [plaintiff] has failed

14

to create a genuine issue of material fact that [the furnisher] failed to comply with § 1681s–2(b)."). Thus, Bond is not entitled to summary judgment.

And, even when viewed in the light most favorable to Bond, the evidence fails to raise a fact question as to whether DFAS received notice of the dispute from a consumer reporting agency, as is required to trigger DFAS's duties under § 1681s–2(b). Rather, the only evidence in the record regarding DFAS receiving notice of *any* dispute from a consumer reporting agency is limited to (i) DFAS's internal records suggesting that it received notification concerning Bond's account prior to Bond filing for Chapter 7 bankruptcy, *see* Def.'s App. 109 (ECF No. 50); and (ii) DFAS's internal records suggesting that it received a dispute notification around July 10, 2019, *see* Def.'s App. 116 (ECF No. 50). These records consist of DFAS's internal log entries that indicate DFAS received an "e-OSCAR notification" about Bond's account.

E-Oscar is a system that consumer reporting agencies use to send notifications of consumer disputes to furnishers. *Id*. at 50; 208. But e-OSCAR retains notifications from consumer reporting agencies and the furnishers' responses for only 120 days. *Id*. at 151–52, 208. *See also In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007) (explaining "[e-OSCAR] only reports information for the preceding 120 days, making it difficult to tell if there were any credit reporting disputes within the past six years

15

related to discharged debts."). In this case, there is no report from e-Oscar regarding any notification concerning Bond's account.

DFAS keeps an internal record of actions taken on debtor accounts in a system called DDMS. Def.'s App. 52–53; *see also* Def.'s App. 98–117. The DDMS log for Bond's account contains several entries indicating that DFAS technicians worked on the disputed debt over several years. Def.'s App. 98–117. But evidence that DFAS received notice of a dispute regarding Bond's debt *prior* to her bankruptcy is not material to any genuine issue in dispute on Bond's FCRA claim. Bond only contends that DFAS violated the FCRA by continuing to report the continuation-bonus debt as owing *after* her bankruptcy discharge. Compl. ¶ 19 (ECF No. 1) (alleging DFAS's report "is inaccurate [under the FCRA] since it fails to indicate that [Bond's] DFAS debts were discharged in a bankruptcy proceeding"). And while the DDMS log entries pertaining to receipt of a dispute notice on July 10, 2019 postdates her bankruptcy discharge, Def.'s App. 116–117, Bond does not allege—much less point to competent summary judgment evidence to raise a genuine issue—that DFAS received notice from a credit reporting agency pursuant to § 1681i(a)(2).

That is, there is no competent summary judgment evidence to show that Bond contacted a credit reporting agency to dispute the DFAS debt prior to July 10, 2019; nor is there competent summary judgment evidence indicating that a credit reporting agency contacted DFAS about Bond's

16

dispute within five business days. Because there is no e-Oscar report, there also is a lack of evidence to demonstrate that any notice "include[d] all relevant information regarding the dispute that the agency has received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). The single DDMS entry from July 10, 2019—almost one month earlier than when Bond alleges she reported her dispute to Equifax—is not sufficient to raise a fact question as to whether a reporting agency provided DFAS the requisite notice of Bond's dispute, so as to trigger DFAS's obligations under § 1681s-2(b).

DFAS is thus entitled to summary judgment on Bond's FCRA claims. *See Welder v. Welder*, 2010 WL 1960622, at *5 (S.D. Tex. May 14, 2010); *Hunsinger*, 2014 WL 1462443, at *7. Accordingly, the Court pretermits deciding whether DFAS's reporting was accurate as a matter of law and whether Bond has evidence that DFAS's investigation was unreasonable.

C.

DFAS also is entitled to summary judgment on Bond's negligence claim because the evidence fails to raise a genuine issue as to whether DFAS's actions caused her damages.

"A plaintiff asserting an FCRA claim has the burden of proving that [her] damages were caused by the defendant's violations of the FCRA." *Zala v. Trans Union, LLC*, 2001 WL 210693, at *6 (N.D. Tex. Jan. 17, 2001). Bond asserts that DFAS's FCRA violations caused her to be "turned down for car loans, a mortgage, and credit card applications." Pl.'s Br. 10 (ECF No. 52).

17

She contends that when she was finally approved for a car loan, she was approved at a substantially increased interest rate due to DFAS's inaccurate reporting to credit reporting agencies. *Id.* She further claims that she was "rejected by three different landlords for rental apartments," "turned down for a VA-sponsored home loan because of the charge-off that continued to appear on her credit report," and had to receive medical treatment for the emotional distress caused by DFAS. *Id.*

But Bond does not point to any competent summary judgment evidence to show that DFAS's continued reporting to credit agencies that she remains liable for the debt after it was allegedly discharged in bankruptcy caused any of her alleged damages. Indeed, during a deposition, Bond admitted that she could not remember when various financial institutions denied her credit card and home loan applications. *See, e.g.*, Def.'s App. 028 (ECF No. 50) (Bond testifying, "I just don't remember—remember the date. I don't remember," in reference to a car loan denial); Def.'s App. 031 (Bond testifying, "I was living in Texas, so it's 2018 or '19; but I just don't remember the month," in reference to a home loan denial); Def.'s App. 032 (Bond testifying, "I just don't remember the year," in reference to a credit-card denial). Without evidence of when her damages occurred, she cannot establish a causal link between such damages and DFAS's alleged conduct.

Further, at some points in her filings, Bond even appears to connect her damages to conduct other than DFAS's alleged FCRA violations. *See,*

18

*e.g.,* Pl.'s Br. 10 (ECF No. 52) (alleging emotional distress caused by the "toll years of disputes with DFAS had taken on her"). Additionally, there is some evidence in the record indicating that DFAS's reporting was not the actual cause of Bond's alleged damages. For example, in a letter from Capital One denying her a credit card in September 2020, the stated reason for denial is that "there have been too many recent inquiries" into Bond's credit. Def.'s App. 195 (ECF No. 50).

Accordingly, the summary judgment evidence does not raise a genuine issue as to whether Bond's damages were caused by DFAS's alleged violations of the FCRA. *See Bacharach v. Suntrust Mortg., Inc.*, 827 F.3d 432, 435 (5th Cir. 2016) ("[plaintiff] has failed to raise a fact issue on an essential element of her [FCRA] claim" since "[she] points to no evidence that the denial of home loan repairs was actually caused by [defendant's] conduct"). For the same reasons, Bond cannot establish beyond peradventure that she suffered damages.

## IV.

Considering the record in the light most favorable to Bond, the evidence does not raise a genuine factual dispute on the elements of the narrow FCRA claims she asserts against DFAS in this action. The record is thus not adequate to survive DFAS's summary judgment motion and does not meet the high burden Bond carries to prevail on her own motion. Therefore, the District Court should DENY Bond's Motion for Summary

Judgment (ECF No. 51), GRANT DFAS's Motion for Summary Judgment (ECF No. 48), and DISMISS Bond's claims with prejudice.

**SO RECOMMENDED.**

February 27, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).